**GIBSON, DUNN & CRUTCHER LLP**
Matthew J. Williams
Mitchell A. Karlan
Alan Moskowitz
Dylan S. Cassidy
200 Park Avenue
New York, NY 10166
(212) 351-4000 (Tel)
(212) 351-4035 (Fax)

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PT DELTA MERLIN DUNIA TEXTILE, *et al.*,[1]<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 19-_____<br><br>(Joint Administration Requested) |

**DECLARATION OF FOREIGN REPRESENTATIVE IN SUPPORT OF VERIFIED
CHAPTER 15 PETITION AND MOTION FOR PROVISIONAL RELIEF**

Geoffrey David Simms, hereby declares as follows:

1.  I submit this declaration in support of (a) the *Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding* (the "**Verified Petition**") and (b) the *Emergency*

---

[1] The Foreign Debtors in these chapter 15 cases are the following entities: (i) PT Delta Merlin Dunia Textile, whose address is Jl Solo - Sragen Km 14, Desa Pulosari, Kec Kebakkramat, Karanganyar, Central Java, (ii) PT Delta Dunia Tekstil, whose address is Jl Raya Solo - Sragen KM 10.8, Desa Kaling, Kec Tasikmadu, Karanganyar, Central Java, (iii) PT Dunia Setia Sandang Asli Tekstil, whose address is Jl Raya Palur Km 7.1, Desa Dagen, Kec Jaten, Karanganyar, Central Java, (iv) PT Delta Merlin Sandang Tekstil, whose address is Jl Raya Timur Km 10, Kel Bumiaji, Kec Gondang, Sragen, Central Java, (v) PT Delta Dunia Sandang Tekstil, whose address is Jl Raya Semarang - Demak Km 14, Desa Tambakroto, Kec Sayung, Demak, Central Java, (vi) PT Perusahaan Dagang dan Perindustrian Damai, whose address is Jl Simongan No 100, Kel Ngemplak Simongan, Kec Semarang Barat, Semarang, Central Java, and (vii) Mr. Sumitro, whose address is Tegalharjo, RT.004/RW.004, Kelurahan Tegalharjo, Kecamatan Jebres, Kota Surakarta, Jawa Tengah, Indonesia.

*Motion for Provisional Relief* (the "**Provisional Relief Motion**")[2] each filed contemporaneously herewith by me in my capacity as the duly authorized foreign representative (the "**Foreign Representative**") of PT Delta Merlin Dunia Textile ("**DMDT**") and its affiliated debtors in a foreign proceeding (collectively with DMDT, the "**Foreign Debtors**") in connection with their foreign proceedings (collectively, the "***PKPU Proceedings***") pending in the Semarang Commercial Court (the "***Indonesian Court***"), pursuant to Indonesian Insolvency Law (as defined in the Verified Petition).

2.  I am the chief executive officer and partner of AJCapital Advisory ("***AJCapital***"), a corporate advisory firm that was appointed by the Duniatex Group (as defined below) to assist them in assessing its financial position and the reorganization of its business. As a result of my firm's appointment, I have intimate knowledge about the Duniatex Group's financial position, business and reorganization plans.

3.  Each of the facts set forth below is true to the best of my knowledge, information and/or belief based upon my personal knowledge from my assistance provided to the Foreign Debtors and/or communications with the Foreign Debtors and their advisors.

    **A.    Simms Background and Qualifications**

4.  I received a Bachelor of Commerce degree from the University of British Columbia in 1982, majoring in accounting and financial information systems. In 2004 I received a Master of Business Administration jointly issued by the Kellogg School of Management and the Hong Kong University of Science and Technology. Additionally, I have received the following professional designations: (1) Chartered Accountant (Canada); (2) Chartered Financial Analyst

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Verified Petition of Provisional Relief Motion, as applicable.

(CFA Institute); and (3) Fellow Insol International. Over the past 35 years I have practiced as an auditor (external and internal), financial advisor, and insolvency practitioner. I am a founding partner of the financial advisory firm PT AJCapital Advisory, and I am very experienced in the areas of financial analysis, capital structuring, fund raising and debt restructuring. I have taught various in-house accounting and finance training courses for multinational consultancy firms, and have provided debt restructuring training course for domestic banks. I have also presented in domestic and international seminars on Indonesian debt, restructurings. Over the course of my career I have participated in various debt restructurings in Indonesia, both voluntary and court supervised, having represented clients in successful debt restructurings totaling more than $10 billion.

  **B.**  **Overview of the Foreign Debtors' Businesses**

  5.  The Foreign Debtors consist of (a) six private companies: (i) DMDT, (ii) PT Delta Dunia Tekstil ("***DDT***"), (iii) PT Dunia Setia Sandang Asli Tekstil ("***DSSAT***"), (iv) PT Delta Merlin Sandang Tekstil ("***DMST***"), (v) PT Delta Dunia Sandang Tekstil ("***DDST***"), and (vi) PT Perusahaan Dagang dan Perindustrian Damai ("***Damaitex***," and collectively with DMDT, DDT, DSSAT, DMST, and DDST, the "***Duniatex Group***"), each incorporated under the laws of Indonesia with their registered offices located in Indonesia and (b) an individual, Mr. Sumitro, who is the beneficial owner and controlling shareholder of the Foreign Debtors and who resides in Indonesia. The Duniatex Group is a vertically integrated group of private textile manufacturing companies each incorporated under the laws of Indonesia with their registered offices located in Indonesia. DDT, DMST and DDST are in the business of yarn manufacturing, DMDT is in the business of greige manufacturing, and DSSA and Damaitex are in the business of textile finishing.

  6.  The board of directors and board of commissioners of each member of the Duniatex Group are comprised of Indonesian residents.

7.      The registered address of the headquarters of the Duniatex Group is Jalan Raya Palur km 7.1 Karanganyar, City of Solo in the Indonesian Province of Central Java in Indonesia. The Duniatex Group is a vertically integrated group of textile manufacturing companies. DDT, DMST and DDST are in the business of yarn manufacturing (collectively the "*Spinning Companies*"). DMDT is in the business of greige manufacturing along with DSSAT (the "*Weaving Companies*"). DSSAT is also part of the textile dyeing and finishing business with Damaitex (collectively the "*Dyeing and Finishing Companies*"). The group structure is set forth in the diagram below.



8.      The Spinning Companies produce both carded and combined yarn from fibre such as "middling" grade raw cotton, viscose rayon fibre, and polyester staple fibre. The Weaving Companies produce cotton, rayon, polyester and denim greiges from yarn produced by the Spinning Companies. The Dyeing and Finishing Companies, in turn, produce finished fabrics

4

predominately for Indonesia domiciled customers from greiges manufactured by the Weaving Companies.

9. The Duniatex Group has 25 production facilities in the cities of Ungaran, Karanganyar, Sukaharjo, Pekalongan, Demak, Sragen, Semarang and Boyolali, all of which are located in the province of Central Java, Indonesia. The Duniatex Group does not have operations or material assets outside of Indonesia.

10. The domestic Indonesian market is by far the largest market for the Duniatex Group. Domestic sales represent 76.1% of the total sales by value for the Duniatex Group. Set out in the table below is a summary break down of the domestic and international sales of the Duniatex Group for the quarter ended June 30, 2019.

| Group | % Value of Domestic Sales /International Sales |
|---|---|
| Spinning Companies | 63.0%/37.0 |
| Weaving Companies | 97.3%/2.7% |
| Dyeing and Finishing Companies | 96.9%/3.1% |
| Total Sales on Group Basis | 76.1%/23.9% |

**C.    Overview of the Duniatex Group's Capital Structure**

11. The Duniatex Group has a complex capital structure that interconnects the various parties in and outside of the Duniatex Group, characterized by the following:

   a)   There are five main classes of capital facilities: bilateral and syndicated term loans, bilateral and syndicated working capital loans, letter of credit facilities ("*L/C Facilities*"), unsecured notes and foreign exchange hedging facilities ("*FX Hedging Facilities*"). Indonesian Rupiah and U.S. Dollar are the denominated currencies.

   b)   The majority of the loan facilities are secured by assets of the underlying borrowers. In some cases, loans are also secured by assets owned by non-borrowing parties of the Duniatex Group or entities outside of the Duniatex Group. For example, a review of valuer reports of land and buildings pledged to lenders of the Duniatex Group shows that approximately 52.6%, by value, is owned not

5

      by the borrower but by either other entities within the Duniatex Group or by Mr. Sumitro and his immediate family.  In addition, Mr. Sumitro has provided personal guarantees to most of the bank lenders of the Duniatex Group.

   c)    All loan facilities are governed by Indonesian law (the "*Onshore Loans*") with the exception of: (i) a single bilateral facility under Singapore law; (ii) the syndicated loan facilities which are under English law ((i) and (ii) being the "*Offshore Loans*"); and (iii) the unsecured notes which are governed by New York law.  All onshore security documentation is governed by Indonesian law.

   d)    There are a total of 48 bank lenders to the Duniatex Group.  Of these, 22 have provided loan facilities to two or more entities within the Duniatex Group representing 81.6% of the total outstanding lent by banks to the group as of 31 August 2019.  Most capital facilities contain cross-default provisions not only within facilities under the same legal entity but also against facilities across legal entities within the Duniatex Group.  As such, should various facilities be in default and accelerated, this will cause a cross default under other loan facilities and the unsecured notes once the relevant acceleration provisions for each instrument are invoked.  Additionally, Mr. Sumitro has provided personal guarantees with respect to the Offshore Loans and various Onshore Loans.  Accordingly, an accelerated default under the unsecured notes will cross default various loan facilities due to the personal guarantees of Mr. Sumitro to the relevant loan facilities.

12.    The table below details the capital structure of the Duniatex Group categorized based on the main classes as mentioned above as of August 31, 2019.

6

| In Millions | Lent by Indonesia Domiciled Lenders | | | Lent by Foreign Domiciled Lenders | Total Loan |
|---|---|---|---|---|---|
| | IDR | US$ | Total US$ Eqv[3] | US$ | US$ Eqv |
| Term Loans | | | | | |
|   Bilateral | 3,074,303 | 10 | 226 | - | 226 |
|   Syndicated | - | 89 | 89 | 187 | 276 |
| Working Capital Loans | | | | | |
|   Bilateral | 5,908,816 | - | 415 | 12 | 427 |
|   Syndicated | - | 47 | 47 | 63 | 110 |
| L/C Facilities | - | 144 | 144 | - | 144 |
| Unsecured Notes | - | - | - | 300 | 300 |
| FX Hedging Facilities | 396,742 | - | 28 | - | 28 |
| | | | | | |
| **Total** | **9,379,861** | **290** | **949** | **562** | **1,511** |

13. As of August 31, 2019, the aggregate sum lent by the Indonesia-domiciled lenders (the "*Indonesia Domiciled Lenders*") of the Duniatex Group amounted to US$948,295,496 (which includes an aggregate sum of US$123,803,772 lent by Indonesia Domiciled Lenders through syndicated loan facilities originated by foreign-domiciled lenders ("*Foreign Domiciled Lenders*")) lent through the following facilities:

(a) US$290,260,959 to DMST from nine Indonesia Domiciled Lenders through six bilateral working capital facilities, one syndicated term loan, five bilateral term loan facilities, four L/C Facilities, and three FX Hedging Facilities.

(b) US$273,739,506 to DDT from nine Indonesia Domiciled Lenders through 10 bilateral working capital facilities, three letter of credit facilities, two bilateral term loans and one FX Hedging Facility, as well as one syndicated working capital facility and one syndicated term loan facility arranged by Foreign Domiciled Lenders totaling US$23,661,111.

(c) US$178,915,729 to DDST from 12 Indonesia Domiciled Lenders through three bilateral working capital facilities, five L/C facilities, two bilateral term loan facilities, and four FX hedging facilities, as well as one syndicated working capital

---

[3] "US$ Eqv" uses IDR and US$ foreign exchange of IDR14,237 as of August 31, 2019.

7

      facility and one syndicated term loan facility arranged by Foreign Domiciled Lenders totaling US$87,302,544.

(d)     US$61,010,556 to DMDT from seven Indonesia Domiciled Lenders through three bilateral working capital facilities, and four bilateral term loan facilities, as well as one syndicated term loan arranged by Foreign Domiciled Lender totaling US$12,840,116.

(e)     US$137,472,755 to DSSAT from 10 Indonesia Domiciled Lenders through 12 bilateral working capital facilities and 10 bilateral term loans facilities.

(f)     US$6,895,990 to Damaitex from one Indonesia Domiciled Lender through two bilateral working capital facilities.

14.     The loans from Foreign Domiciled Lenders of the Duniatex Group as of August 31, 2019 amounted to US$562,296,538 (which excludes US$123,803,772 that the Indonesia Domiciled Lenders lent to the Duniatex Group via syndicated arranged by the Foreign Domiciled Lenders). The capital facilities were:

a) US$300,000,000 in notes 8.625% senior notes due 2024 issued by DMDT (the "*Notes*") governed by a New York law indenture, dated March 12, 2019 (the "*Indenture*") and listed on the Singapore Exchange Securities Trading Limited. The outstanding principal as of August 31, 2019 remained at US$300,000,000.

b) US$13,000,000 under a bilateral term loan dated August 27, 2019 from BNP Paribas to DMDT governed by Singapore law with Singapore law governed and Indonesian law governed personal guarantees from Mr. Sumitro. The outstanding principal as at September 13, 2019 was US$12,265,310.

c) US$160,000,000 (with an option to increase up to US$250,000,000) under a facilities agreement dated June 21, 2018 from a syndicate of banks to DMDT ("*DMDT Syndicate*") governed by English law with a personal guarantee from Mr. Sumitro (the "*2018 Loan*"). The outstanding principal as of August 31, 2019 was US$66,034,884. This current outstanding principal excludes a sum of US$12,840,116 owing to an Indonesia Domiciled Lender as described above.

d) US$260,000,000 under a facilities agreement dated September 29, 2016 from a syndicate of banks to DDST ("*DDST Syndicate*") governed by English law with a personal guarantee from Mr. Sumitro The outstanding principal as of August 31, 2019 was US$75,297,456. This current outstanding principal excludes US$87,302,544 owing to Indonesian Domiciled Lenders as described previously.

e) US$135,000,000 facilities agreement dated November 15, 2017 from a syndicate of banks to DDT ("*DDT Syndicate*") governed by English law with a personal guarantee

8

from Mr. Sumitro. The current outstanding principal as of August 31, 2019 was US$108,698,889 which excluded US$23,661,111 lent by the Indonesia Domiciled Lenders to DDT as described at paragraph 17(b) above.

15. Mr. Sumitro has provided personal guarantees with respect to various Duniatex Group debt facilities.

16. Additionally, Mr. Sumitro has three property loans and a term loan from three Indonesian banks. The aggregate outstanding balance as at August 31, 2019 was US$6,554,841. The three property loans were used to finance the purchase of three separate residential properties. The term loan was used to meet Mr. Sumitro's personal tax obligations in Indonesia and is secured over a portfolio of land owned by Mr. Sumitro.

### D. Overview of the Foreign Debtors' Financial Position

17. Based on the Duniatex Group's financial information as of June 30, 2019 and short term cash flow projections, projected cash collection in the next 90 and 180 days from June 30, 2019 (i.e. September 30, 2019 and December 31, 2019 respectively) is expected to be sufficient to cover the Duniatex Group's ongoing operating costs. However, there will be insufficient funds thereafter to service the Duniatex Group's expected debt repayment obligations and expected loan maturities during the same period.[4]

18. The following tables sets out the current expected cash shortfall for the Duniatex Group.

---

[4] The current cash flow projections are based on draft unaudited financial information of the Duniatex Group, management expectations and discussions with its advisors. Management and its advisors revise and update the cash flow projections as and when up to date and accurate information becomes available. During the PKPU Proceedings, management and its advisors will conduct due diligence in order to formulate a detailed cash flow projection for the Duniatex Group.

| US$'000[5] | DDT | | DDST | |
|---|---|---|---|---|
| | Q3 2019 | Q4 2019 | Q3 2019 | Q4 2019 |
| Cash balance as of beginning of the period | 763 | (60,057) | 2,136 | (111,062) |
| Expected collection from customers | 43,218 | 43,818 | 42,415 | 42,866 |
| Expected payment to suppliers and operating expenses | (40,400) | (41,405) | (39,646) | (40,062) |
| **Projected cash flow from operating activities** | **2,818** | **2,413** | **2,769** | **2,804** |
| Expected repayment / maturity of financial indebtedness | | | | |
|    Principal | 58,462 | 23,527 | 112,448 | 44,082 |
|    Interest | 5,176 | 6,040 | 3,519 | 2,229 |
| **Expected cash shortfall** | **(60,057)** | **(87,211)** | **(111,062)** | **(154,569)** |

| US$'000[6] | DMST | | DMDT | |
|---|---|---|---|---|
| | Q3 2019 | Q4 2019 | Q3 2019 | Q4 2019 |
| Cash balance as of beginning of the period | 9,173 | (58,013) | 1,791 | (21,189) |
| Expected collection from customers | 49,372 | 53,797 | 70,896 | 72,351 |
| Expected payment to suppliers and operating expenses | (48,563) | (51,369) | (68,118) | (70,466) |
| **Projected cash flow from operating activities** | **809** | **2,428** | **2,778** | **1,885** |
| Expected repayment / maturity of financial indebtedness | | | | |
|    Principal | 66,024 | 107,999 | 23,538 | 11,384 |
|    Interest | 1,971 | 2,134 | 2,220 | 2,310 |
| **Expected cash shortfall** | **(58,013)** | **(165,718)** | **(21,189)** | **(32,999)** |

| US$'000[7] | DSSAT | | Damaitex | |
|---|---|---|---|---|
| | Q3 2019 | Q4 2019 | Q3 2019 | Q4 2019 |
| Cash balance as of beginning of the period | 463 | (23,351) | 45 | (146) |
| Expected collection from customers | 70,896 | 72,351 | | |
| Expected payment to suppliers and operating expenses | (68,118) | (70,466) | | |
| **Projected cash flow from operating activities** | **2,778** | **1,885** | **80** | **80** |
| Expected repayment / maturity of financial indebtedness | | | | |
|    Principal | 22,428 | 22,613 | - | 6,943 |
|    Interest | 4,164 | 2,883 | 271 | 178 |
| **Expected cash shortfall** | **(23,351)** | **(46,962)** | **(146)** | **(7,187)** |

---

[5] Based on average foreign exchange rate of IDR14,141 as of June 30, 2019.

[6] Based on average foreign exchange rate of IDR14,141 as of June 30, 2019.

[7] Based on average foreign exchange rate of IDR14,141 as of June 30, 2019.

19. Total expected aggregate cash shortfall is estimated to be US$273,818,798 by the end of September 2019 and US$494,645,895 by December 31, 2019.

20. Between June and October 2018, the Duniatex Group entered into various foreign exchange hedging contracts to hedge against the Duniatex Group's Indonesian Rupiah and U.S. Dollar foreign exchange rate risk. Between October 2018 and June 2019, the Indonesian Rupiah depreciated approximately 7.3% against the US Dollar, causing the Duniatex Group to record losses of US$17,504,385 for the period ended 31 December 2018 on foreign exchange contracts with aggregate value of US$804,100,000. Further, actual and unrealized foreign exchanges losses for 2019 is estimated to be US$66,663,036 against foreign exchange contracts with aggregate value of US$960,500,000. These losses have severely affected the cash reserve of the Duniatex Group.

21. The material depreciation of Indonesian Rupiah against the U.S. Dollar increased the production cost of the Duniatex Group as the cost to import raw materials significantly increased particularly the cost to import raw cotton from the United States. In addition, in August 2018, the United States tariffs on imports from China increased from 10% to 25%, including tariffs on textile products. Around the same time, Indonesia's import of Chinese textile products significantly increased as Chinese textile producers sought to find markets for their products other than the United States. The combination of these two factors, and the associated lag effect adversely affected Duniatex Group's production and sales volumes in 2019.

### E. The Foreign Debtors' Restructuring Efforts Prior to the PKPU Proceedings

22. Given the Duniatex Group's deteriorating financial position, the management of the Duniatex Group engaged AJCapital Advisory on or around July 15, 2019 to assess the Duniatex

Group's financial position and the potential reorganization of its business. In addition, the Duniatex Group had commenced discussions with various onshore lenders in an effort to achieve a consensual restructuring of the Duniatex Group (the "**Consensual Restructuring**").

23. Between July and September 2019, as part of its Consensual Restructuring Process, the Duniatex Group took the following actions:

   a) DDT negotiated with three Indonesia Domiciled Lenders to extend the maturity of several working capital facilities and term loans with an aggregate principal amount of US$111,168,083 between one to three years.

   b) DMST negotiated with two Indonesia Domiciled Lenders to extend the maturity of several working capital loan facilities with an aggregate principal amount of US$51,928,075 for between four to six years.

   c) DDST negotiated with one Indonesia Domiciled Lender to extend the maturity of several working capital and term loan facilities with aggregate principal of US$6,216,197 for one and four years respectively.

   d) DMDT negotiated with one Indonesia Domiciled Lender to extend the maturity of several working capital loans with an aggregate principal amount of US$19,667,065 by one year.

   e) DSSAT negotiated with five Indonesia Domiciled Lenders to extend the maturity of several working capital loan and term loan facilities with an aggregate principal amount of US$40,528,201 for between one to six years.

24. In further efforts to achieve the Consensual Restructuring for the Duniatex Group, DMDT negotiated with BNP Paribas to convert losses on a foreign exchange hedging account into a working capital facility. Accordingly, DMDT entered into a bilateral loan agreement for US$13,000,000 with BNP Paribas on August 27, 2019 (the "**BNP Loan**"). To secure the BNP Loan, Mr. Sumitro also entered into two personal guarantees (under both Indonesian law and Singapore law) on the same date (the "**Sumitro Guarantees**"). The BNP Loan and the Sumitro Guarantees were entered into 15 days prior to the involuntary PKPU proceeding which was commenced against the Duniatex Group on September 11, 2019, as outlined below.

### F. Interest Payments on the Note

25. As a result of the declining cash position, on or around September 11, 2019—the same day an involuntary PKPU proceeding was commenced against the Duniatex Group, as described below—the board of directors and the board of commissioners of DMDT (the Issuer of the Notes pursuant to the Indenture) concluded that DMDT did not have sufficient funds to (i) meet its scheduled coupon payments due on September 12, 2019 totaling US$12,937,500 and (ii) refill the Notes' "Interest Reserve Account" with an amount equal to one semi-annual payment of interest under the terms of the Notes. Accordingly, on September 12, 2019, DMDT announced on the Singapore Stock Exchange that the current financial and operational position of the company would not make it commercially feasible to make any interest payments on the Notes.

26. On September 16, 2019, the Indenture Trustee for the Notes (the "*Indenture Trustee*") issued a notice asserting that the failure to make interest payments that were due and payable on September 12, 2019, would give rise to a default under the Indenture, if such failure continued uncured for a period of 30 consecutive days.

### G. The Foreign Debtors PKPU Proceedings

27. On September 11, 2019, PT Shine Golden Bridge ("*PT SGB*"), a creditor of the Foreign Debtors, filed an involuntary application (the "*Duniatex Group PKPU Application*") to commence a PKPU proceeding against the members of the Duniatex Group in the Indonesian Court (the "*Duniatex Group PKPU*"). The Duniatex Group PKPU is registered under no. 22/Pdt.Sus-PKPU/2019/PN Niaga smg.

28. DMDT owes approximately US$125,000 to PT SGB pursuant to a supply contract entered in 2018 (the "*SGB Debt*"). The other members of the Duniatex Group and Mr. Sumitro each guaranteed the SGB Debt.

29. As a result of the Duniatex Group PKPU Application, and the personal guarantees provided by Mr. Sumitro, on September 25, 2019, Mr. Sumitro, the beneficial owner and controlling shareholder of the Duniatex Group, filed a voluntary application (the "*Sumitro PKPU Application*") to commence an individual PKPU proceeding in the Indonesian Court (the "*Sumitro PKPU*"). The Sumitro PKPU is a stand-alone PKPU case, registered under No.25/Pdt.Sus-PKPU/2019/PN Niaga Smg.

30. On September 30, 2019, the Indonesian Court issued (i) an order granting the Duniatex Group PKPU Application (the "*Duniatex Group PKPU Order*") and (ii) an order granting the Sumitro PKPU Application (the "*Sumitro PKPU Order*," and together with the Duniatex Group PKPU Order, the "*PKPU Orders*"). Certified copies of the English translation of the PKPU Orders are attached to the Petitions, respectively.

31. In the Duniatex Group PKPU, Mr. Pudjo Hunggul HW, S.H., M.H was appointed as the supervising judge and Mr. Hamonangan Syahdan Hutabarat, S.H, Mr. Alfin Sulaiman, S.H., M.H., Mr. Januardo Sulung P. Sihombing, S.H., M.H., M.A., BKP. and Mrs. Nila Asriyanti, S.H., were selected and appointed as the independent administrators.

32. In the Sumitro PKPU, Mr. Edy Suwanto, S.H., M.H was appointed as the supervising judge and Mr. Verry Sitorus, S.H, and Mr. Uli Ingot Hamonangan Simanungkalit, S.H., were selected and appointed as the independent administrators.

33. On October 4, 2019, the administrators provided notice of the proceeding to known creditors by registered mail and published notice in Harian Bisnis Indonesia, Harian Tribun Jateng and the State Gazette of the Republic of Indonesia.

34. The Duniatex Group PKPU and Sumitro PKPU are separate PKPU proceedings, but, in light of the connections between Mr. Sumitro and the Duniatex Group, for efficiency the

14

two PKPU Proceedings are intended to effectively be jointly administered in Indonesia and the Foreign Debtors expect to propose a Composition Plan covering both PKPU Proceedings. Under PKPU Law, a single PKPU Composition Plan can encompass more than one PKPU proceeding.

35. In the PKPU Proceedings, the Foreign Debtors intend to present a Composition Plan that would allow the Duniatex Group to avoid liquidation, ensure the continued employment of the employees, and maximize value for all stakeholders in an equitable manner.

### H.    Appointment as Foreign Representative

36. The respective board of commissioners and board of directors of each of the members of the Duniatex Group appointed me as the Foreign Representative for each of the members of the Duniatex Group in connection with their Chapter 15 Cases and directed me to commence a Chapter 15 case for each member of the Duniatex Group upon entry of the Duniatex Group PKPU Order.

37. Pursuant to a power of attorney, each member of the Duniatex Group, among other things, formally appointed me as the Foreign Representative in their Chapter 15 Cases.

38. Pursuant to a power of attorney, Mr. Sumitro, amongst other things, formally appointed me as the Foreign Representative in connection with his Chapter 15 Case.

39. The authority given to me by each member of the Duniatex Group and Mr. Sumitro to act as their Foreign Representative in these Chapter 15 Cases is acknowledged and approved by the administrators of the Duniatex Group PKPU and the Sumitro PKPU.

### I.    The Chapter 15 Cases

40. On the date hereof (the "*Petition Date*"), I caused an Official Form 410 (Chapter 15 Petition for Recognition of a Foreign Proceeding) to be filed on behalf of each of the Foreign Debtors commencing these chapter 15 cases.

15

41. The Foreign Debtors have paid a retainer to Gibson, Dunn & Crutcher LLP ("**Gibson Dunn**") in which each has a *pro rata* ownership interest. The retainer is held in a Citibank bank account located in this District. Additionally, Foreign Debtor DMDT is party to an indenture governed by New York law, as described below.

**J.    Other Relevant Facts Regarding the Foreign Debtors**

42. Each member of the Duniatex Group is a private company incorporated under the laws of Indonesia and has its registered office in Indonesia. Mr. Sumitro is an individual.

43. DMDT, as issuer of the Notes, is party to the Indenture which is governed by New York Law and in the Indenture, DMDT consented to jurisdiction in New York in connection with any suit, action or proceeding arising out of or relating to the Notes.

44. Mr. Sumitro is a citizen of the Republic of Indonesia, his domicile is in Indonesia, and he has lived in Indonesia his entire life. He is the ultimate beneficial owner and the controlling shareholder of each member of the Duniatex Group, which are all incorporated in Indonesia.

45. Bank of New York Mellon is the trustee under the Indenture (the "**Indenture Trustee**").

46. By written notice dated September 12, 2019, DMDT announced on the Singapore Stock Exchange that the current financial and operational position of the company would not make it commercially feasible to make any interest payments on the Notes.

47. On September 16, 2019, the Indenture Trustee issued a notice asserting that the Issuer was in default under the Notes due to a failure to (i) make interest payments that were due and payable on September 12, 2019 and (ii) if such failure continues for a period of 30 consecutive days.

48. On September 20, 2019, Gibson, Dunn & Crutcher acting on the instructions of PT Delta Merlin Dunia Textile responded to the Indenture Trustee's letter dated September 16, 2019

16

noting, amongst other things, that the Issuer is currently assessing its financial position and has engaged advisors to assist in this exercise.

49. The Indonesian Proceeding is a judicial proceeding, including an interim proceeding, under Indonesian law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation. Accordingly, I believe that the Indonesian Proceeding is a "foreign proceeding" within the meaning of § 101(23) of the Bankruptcy Code.

50. Each member of the Duniatex Group is incorporated under Indonesian law and has its registered offices in Indonesia. As a result, I believe that the Foreign Debtor has its "center of main interests" in Indonesia and, therefore, the Indonesian Proceeding should be recognized as a "foreign main proceeding" pursuant to § 1502(4) of the Bankruptcy Code.

51. In addition to the PKPU Proceedings, contemporaneously herewith, each of the Foreign Debtors will commence an ancillary proceeding in Singapore pursuant to section 354B of the Companies Act (Chapter 50 of Singapore) (the "*Singapore Companies Act*") read with Article 15 of the UNCITRAL Model Law on Cross-Border Insolvency as contained in the Tenth Schedule of the Singapore Companies Act (the "*Singapore Proceeding*"). There are no other pending debt adjustment or insolvency proceedings of any kind involving any Foreign Debtor.

### K. Need for Provisional Relief

52. The PKPU Orders implemented a moratorium on creditor actions and during the PKPU Proceeding, all collection efforts against the debtor during are stayed and secured creditors are estopped from enforcing their security interests during the PKPU proceeding. Accordingly, the Duniatex Group continues to operate in the ordinary course of business under the protection of that moratorium.

53. In the Provisional Relief Motion, I seek to have section 362 of title 11 of the U.S. Bankruptcy Code made applicable to the Foreign Debtors' Chapter 15 Cases to preclude any parties from taking actions in the United States that would jeopardize the Foreign Debtors' restructuring efforts in the PKPU Proceedings.

54. I believe that this relief is critical to the success of the PKPU Proceedings because any lawsuit in the United States against DMDT, any member of the Duniatex Group, or Mr. Sumitro will significantly impede the Foreign Debtors' ability to implement their restructuring in Indonesia by draining the Duniatex Group's limited resources and diverting the attention of management. These problems will only be exacerbated, and the Foreign Debtors' restructuring further threatened, if the Foreign Debtors are required to engage in extremely expensive and time-consuming discovery.

55. If the Foreign Debtors' restructuring efforts fail due to lawsuits or potential lawsuits instituted in New York, then the Foreign Debtors will be forced into liquidation, to the detriment of all of their creditors.

[*signature page follows*]

Pursuant to 28 U.S.C, § 1746, 1 hereby declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed on October, __8__, 2019.
in the Republic of Indonesia.

_____
Geoffrey David Simms
Foreign Representative