**GIBSON, DUNN & CRUTCHER LLP**
Matthew J. Williams
Mitchell A. Karlan
Alan Moskowitz
Dylan S. Cassidy
200 Park Avenue
New York, NY 10166
(212) 351-4000 (Tel)
(212) 351-4035 (Fax)

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> PT DELTA MERLIN DUNIA TEXTILE, *et al.*,[1] <br><br> Debtors in a Foreign Proceeding. | Chapter 15 <br><br> Case No. 19-_____ <br><br> (Joint Administration Requested) |

**DECLARATION OF GREGORIUS PETRUS AJI WIJAYA IN SUPPORT OF**
**VERIFIED CHAPTER 15 PETITION AND MOTION FOR PROVISIONAL RELIEF**

Gregorius Petrus Aji Wijaya, an Indonesian citizen, passport holder number X 538710, of full age, hereby declares as follows:

1. I submit this declaration in support of (a) the *Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding* (the "**Verified Petition**") and (b) the *Emergency Motion for Provisional Relief* (the "**Provisional Relief Motion**")[2] each filed contemporaneously

---

[1] The Foreign Debtors in these chapter 15 cases are the following entities: (i) PT Delta Merlin Dunia Textile, whose address is Jl Solo - Sragen Km 14, Desa Pulosari, Kec Kebakkramat, Karanganyar, Central Java, (ii) PT Delta Dunia Tekstil, whose address is Jl Raya Solo - Sragen KM 10.8, Desa Kaling, Kec Tasikmadu, Karanganyar, Central Java, (iii) PT Dunia Setia Sandang Asli Tekstil, whose address is Jl Raya Palur Km 7.1, Desa Dagen, Kec Jaten, Karanganyar, Central Java, (iv) PT Delta Merlin Sandang Tekstil, whose address is Jl Raya Timur Km 10, Kel Bumiaji, Kec Gondang, Sragen, Central Java, (v) PT Delta Dunia Sandang Tekstil, whose address is Jl Raya Semarang - Demak Km 14, Desa Tambakroto, Kec Sayung, Demak, Central Java, (vi) PT Perusahaan Dagang dan Perindustrian Damai, whose address is Jl Simongan No 100, Kel Ngemplak Simongan, Kec Semarang Barat, Semarang, Central Java, and (vii) Mr. Sumitro, whose address is Tegalharjo, RT.004/RW.004, Kelurahan Tegalharjo, Kecamatan Jebres, Kota Surakarta, Jawa Tengah, Indonesia.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Verified Petition of Provisional Relief Motion, as applicable.

herewith by Geoffrey David Simms in his capacity as the duly authorized foreign representative (the "**Foreign Representative**") of PT Delta Merlin Dunia Textile ("**DMDT**") and its affiliated debtors in a foreign proceeding (collectively with DMDT, the "**Foreign Debtors**") in connection with their foreign proceedings (collectively, the "**PKPU Proceedings**") pending in the Semarang Commercial Court (the "**Indonesian Court**"), pursuant to Indonesian Insolvency Law (as defined below).

2. I am a partner in the firm of Aji Wijaya & Co., Attorneys & Counselors at Law, Indonesian counsel to the Foreign Debtors with respect to the PKPU Proceeding in the Indonesian Court.

3. My office address is Cyber 2 Tower, Floor 31, Unit A, Jalan H.R. Rasuna Said, Bloc X-5, number 13, Jakarta Selatan 12950, Indonesia.

4. I received a Master of Laws (S.H.) from the University of Indonesia in 1985, majoring in civil, criminal and procedural law. Additionally, I have also studied at the Institute of Management Education and Development, completing courses in advanced accounting, capital markets, and bankruptcy law. Over the past 25 years I have practiced as an advocate, solicitor and legal consultant. I am a founding partner of the law firm of Aji Wijaya & Co., and I am very experienced in the areas of bankruptcy and restructuring. I have served as a lecturer in corporate law and taught various legal training courses for multinational companies. I have also presented national and international seminars on Indonesian bankruptcy law. Since 1998, I have been a registered receiver and administrator with the Department of Justice of the Republic of Indonesia. I am a registered lawyer with the Capital Market Supervisory Board, a registered legal consultant with the Indonesian Capital Markets and Financial Institutions Supervisory Board, Vice Chairman of the Association of Capital Market Legal Consultants, and a registered Receiver and Administrator with the Indonesian Receiver and Administrator Association. Over the course of my career I have participated in various debt restructurings in the Jakarta Commercial Court, Medan Commercial Court, and also SemarangCommercial Court, having represented clients in successful debt restructurings totaling more than $12.5 billion.

5. Unless otherwise specified, all facts set forth in this Declaration are based upon my personal knowledge from my assistance provided to the Foreign Debtors in connection with the PKPU Proceedings and/or my experience and knowledge of Indonesian law.

### A. PKPU Proceedings Generally

6. PKPU is an abbreviation for Penundaan Kewajiban Pembayaran Utang, a literal translation of the Indonesian phrase for "suspension of payments." A PKPU proceeding is not an involuntary suspension of payments, but instead involves a court-enforced suspension of payments of creditor liabilities.

7. PKPU proceedings are governed by Law No. 37 of 2004 on Bankruptcy and Suspension of Debt Payment Obligations (the "*Indonesian Insolvency Law*"). An unofficial English translation of the Indonesian Insolvency Law is attached hereto as **Exhibit A**.

8. The Indonesian Insolvency Law contains several sections, one of which covers the declaration of the debtor's bankruptcy and the liquidation of the debtor's assets for the benefit of creditors (the "*Indonesian Bankruptcy Law*"). Another section of the Indonesian Insolvency Law governs PKPU proceedings (the "*PKPU Law*").

9. Indonesian PKPU proceedings, as set out in Article 222, paragraph 2 and 3 of the Indonesian Insolvency Law, are intended to permit a debtor to achieve an amicable settlement with its creditors and thereby avoid a declaration of bankruptcy by, and liquidation of, the debtor. It is a process whereby the debtor proposes to its creditors a composition plan to restructure its debts and reorganize its business operations (a "*Composition Plan*").

10. Matters under the Indonesian Insolvency Law, including PKPU proceedings, are adjudicated in the Indonesian Court by a panel of three judges. Judges of the Indonesian Court have specialized knowledge and experience in insolvency and other business law matters. Only the ratification of a Composition Plan may be appealed to the Indonesian Supreme Court pursuant to Article 295 of the PKPU Law, while the PKPU Order of the Indonesian Court cannot be appealed to the Indonesian Supreme Court pursuant to Article 235 paragraph 1 of the PKPU Law.

11. The PKPU process commences with the filing of a PKPU application. PKPU Law does not differentiate between a PKPU proceeding for an individual or a company, and a PKPU proceeding can be commenced for either an individual or company. Pursuant to Article 222 of the PKPU Law, a PKPU proceeding can be voluntary (i.e., commenced either by the debtor itself), provided that it has more than one creditor and has failed to pay at least one debt which is due and payable, or involuntary (i.e., commenced by a creditor), if the creditor determines that the debtor will be unable to pay a debt that is due and payable.

12. If the application is submitted by a debtor, pursuant to Article 225(2) of the PKPU Law, the Indonesian Court must issue its order approving or denying the application within three days of the application. If the application is submitted by a creditor, Article 225(3) of the PKPU Law provides that within 20 days of that filing, the Indonesian Court must issue its order approving or denying the application. Pursuant to Article 224(4), an initial case hearing (the "***Initial PKPU Hearing***") must be scheduled within 45 days of the order commencing the PKPU proceeding. As described in paragraph 35 below, at the Initial PKPU Hearing creditors vote whether to continue or dismiss the PKPU proceeding unless a Composition Plan has been proposed beforehand. The continuation of the PKPU proceeding must then be approved by the Indonesian Court.

13. If a PKPU application (either voluntary or involuntary) is granted, the PKPU proceeding is commenced and a supervisory judge is appointed to oversee the proceeding. Pursuant to Article 225, (2) and (3) of the PKPU Law, the Indonesian Court also appoints one or more independent administrators who, in accordance with Article 240, paragraph 1 of the PKPU Law, together with the debtor, manages the PKPU proceeding which includes exercising control over the debtor's assets during the PKPU proceeding.

14. Article 246 of the PKPU Law (a) implements a stay of all collection efforts against the debtor during the PKPU proceeding and (b) stays secured creditors' rights to enforce their security interest during the PKPU proceeding. Article 242 of the PKPU Law provides that: (a) all enforcement processes against the debtor to pursue debt settlement that were initiated before the PKPU proceedings be suspended; and (b) upon the request of the administrators or the

4

supervisory judge, all attachments over the debtor and its assets are required to be lifted immediately after a permanent suspension of payments declaration is issued by the court.

15. Article 245 of the PKPU Law provides that, except for secured and other privileged claims, the debtor is generally prohibited to pay any of its debts during the PKPU proceeding, unless the payment is made to all of its creditors proportionally and without exception.

16. Additionally, Article 240 of the PKPU Law provides that, during the PKPU proceeding, the debtor is barred from disposing assets or borrowing money without the approval of the independent administrators appointed by the Indonesian Court. Loans can only be approved by administrators if they are for purposes of increasing the value of the debtor's assets. If the borrowing requires the posting of collateral, the loan must be approved by the supervising judge.

17. Pursuant to Article 255 of the PKPU Law, a PKPU proceeding may be terminated by the Indonesian Court at the request of one or more creditors or the supervising judge if, *inter alia*, the debtor acts in bad faith in managing its assets during the PKPU proceeding or the debtor attempts to prejudice its creditors.

18. Pursuant to Article 224 of the PKPU Law, the debtor is required to file with the Indonesian Court a list of the types and amounts of receivables and debts.

19. The PKPU Law includes an equitable process for the submission and review of creditor claims. Under the PKPU Law, all claims must be verified and written proofs must be submitted to the administrators. Pursuant to Article 271 of the PKPU Law, the administrators are required to verify the claims against the debtor's records. The administrators review the genuineness of the debts and, as provided under Article 272 of the PKPU Law, decide whether to either acknowledge or reject the submitted claims. Under Article 280 of the PKPU Law, the supervisory judge also assesses the claims and may determine whether the creditors whose claims are rejected by the administrators can participate in voting on the proposed plan.

### B.    PKPU Composition Plan

20.    As noted above, the goal of a PKPU proceeding is to present a Composition Plan to restructure the debtor's debts and reorganize its business operations.

21.    Once a Composition Plan is proposed by a PKPU debtor, all parties in interest (the debtor, the creditors, and the administrators) enter into negotiations regarding the debtor's proposed Composition Plan and, pursuant to Article 268 of the PKPU Law, a meeting is scheduled (the "*Initial Composition Plan Meeting*"). A Composition Plan requires the approval of a majority in number and at least two-thirds in value of each class of debt of the debtor who attend and vote at the Initial Composition Plan Meeting. If the debtor's Composition Plan is not accepted by the requisite majority of creditors, then a receiver is appointed and the debtor is liquidated under the Indonesian Insolvency Law.

22.    If the Composition Plan is not submitted before the Initial PKPU Hearing, the requisite majority of creditors must vote on whether to allow for the extension of the PKPU proceeding (an extension may not last beyond 270 days beyond the date of the declaration of the temporary suspension of payments). If an extension of time is granted, further creditors' meetings may be held for the debtor to present its Composition Plan to its creditors. Upon the debtor showing reasonable endeavors to progress the PKPU process, it is common for an extension to be granted should it be required. At one of these meetings, the creditors will either vote to accept or reject the Composition Plan or may once again extend the PKPU proceeding to allow the debtor to put forward a restructuring proposal (provided that the aggregate of all extensions given do not exceed 270 days).

23.    If the Composition Plan is approved by creditors, it must then be approved by the Indonesian Court. Under Article 284 of the PKPU Law, the administrators and the creditors have an opportunity to object to the approval of the Composition Plan. Pursuant to Article 285 of the PKPU Law, the Indonesian Court can reject a Composition Plan accepted by the requisite majority of creditors if, *inter alia* (a) the value of the debtor's assets is far greater than the amount agreed upon in the Composition Plan; (b) there are significant issues regarding implementation of the

6

Composition Plan; (c) the plan is not proposed in good faith; or (d) the fees and costs of the administrators have not been paid.  If the Composition Plan is rejected by the Indonesian Court, then a receiver is appointed and the debtor is declared bankrupt and liquidated under the Indonesian Insolvency Law.

24.     Under Article 286 of the PKPU Law, if the proposed Composition Plan is approved by creditors and is thereafter approved by the Indonesian Court, the Composition Plan will bind all creditors, except secured creditors that vote against the Composition Plan.

25.     The ratification of a composition plan by the Indonesian Court may be appealed to the Indonesian Supreme Court pursuant to Article 295 of the PKPU Law.  Such an appeal must be submitted within 30 days.

26.     In accordance with Article 291 of the PKPU Law, the debtor's failure to comply with the terms of an approved restructuring plan may result in an attempt by the debtor's creditors to nullify the plan and a declaration by the Indonesian Court of the debtor as bankrupt, which results in the appointment of a receiver and the liquidation of the debtor under the Indonesian Insolvency Law.

27.     In recent years, the PKPU process has been utilized to restructure numerous major Indonesian companies which conduct business internationally, including the following:  PT Berlian Laju Tanker Tbk, PT Bumi Resources Tbk, PT Apexindo Pratama Duta, Tbk., PT Humpuss Intermoda Transportasi Tbk, PT Trans-Pacific Petrochemical Indotama, PT Asmin Koalindo Tuhup, and PT Arpeni Pratama Ocean Line Tbk.

28.     In my expert opinion, the PKPU Law as administered in the Indonesian courts provides a fair and transparent process for restructuring the debts of a debtor.

29.     In addition, it is my expert opinion that the PKPU Law affords creditors a full and fair opportunity to participate in the PKPU process.

### C.    Foreign Debtors' Indonesian Proceeding

#### 1.    The Duniatex Group's PKPU Proceeding

30.    On September 11, 2019, PT Shine Golden Bridge ("*PT SGB*"), a creditor of the Foreign Debtors, filed an involuntary application (the "*Duniatex Group PKPU Application*") to commence a PKPU proceeding against the members of the Duniatex Group in the Indonesian Court (the "*Duniatex Group PKPU*").  The Duniatex Group PKPU is registered under no. 22/Pdt.Sus-PKPU/2019/PN Niaga smg.

31.    DMDT owes approximately US$125,000 to PT SGB pursuant to a supply contract entered in 2018 (the "*SGB Debt*").  The other members of the Duniatex Group and Mr. Sumitro each guaranteed the SGB Debt.

#### 2.    Mr. Sumitro's PKPU Proceeding

32.    As a result of the Duniatex Group PKPU Application, and the personal guarantees provided by Mr. Sumitro, on September 25, 2019, Mr. Sumitro, the beneficial owner and controlling shareholder of the Duniatex Group, filed a voluntary application (the "*Sumitro PKPU Application*") to commence an individual PKPU proceeding in the Indonesian Court (the "*Sumitro PKPU*").  The Sumitro PKPU is a stand-alone PKPU case, registered under No.25/Pdt.Sus-PKPU/2019/PN Niaga Smg.

#### 3.    The PKPU Orders

33.    On September 30, 2019, the Indonesian Court issued (i) an order granting the Duniatex Group PKPU Application (the "*Duniatex Group PKPU Order*") and (ii) an order granting the Sumitro PKPU Application (the "*Sumitro PKPU Order*," and together with the Duniatex Group PKPU Order, the "*PKPU Orders*").  Certified copies of the English translation of the PKPU Orders are attached to the Petitions, respectively.  The PKPU Orders provide a 45-day moratorium on payments (which can be extended by creditor vote and court approval at the Initial PKPU Hearing), during which the Foreign Debtors are required to prepare a Composition Plan and seek agreement with its creditors.  The Duniatex Group continues to operate in the ordinary course of business under the protection of that moratorium.

8

34. In the Duniatex Group PKPU, Mr. Pudjo Hunggul HW, S.H,M.H was appointed as the supervising judge and Mr. Hamonangan Syahdan Hutabarat, S.H, Mr. Alfin Sulaiman, S.H.,M.H, Mr. Januardo Sulung P. Sihombing, S.H., M.H., M.A., BKP. and Mrs. Nila Asriyanti, S.H., were selected and appointed as the independent administrators.

35. In the Sumitro PKPU, Mr. Edy Suwanto, S.H,M.H was appointed as the supervising judge and Mr. Verry Sitorus, S.H, and Mr. Uli Ingot Hamonangan Simanungkalit, S.H., were selected and appointed as the independent administrators.

36. On or about October 4, 2019, the administrators provided notice of the proceeding to known creditors by registered mail and published notice in Harian Bisnis Indonesia, Harian Tribun Jateng and the State Gazette of the Republic of Indonesia.

37. The Duniatex Group PKPU and Sumitro PKPU are separate PKPU proceedings, but, in light of the connections between Mr. Sumitro and the Duniatex Group, for efficiency the two PKPU Proceedings are intended to effectively be jointly administered in Indonesia and the Foreign Debtors expect to propose a Composition Plan covering both PKPU Proceedings. Under PKPU Law, a single PKPU Composition Plan can encompass more than one PKPU proceeding.

38. In the PKPU Proceedings, the Foreign Debtors intend to present a Composition Plan that would allow the Duniatex Group to avoid liquidation, ensure the continued employment of the employees, and maximize value for all stakeholders in an equitable manner.

39. The authority given to Mr. Simms by each member of the Duniatex Group and Mr. Sumitro to act as their Foreign Representative in these Chapter 15 Cases has been acknowledged and approved by the administrators of the Duniatex Group PKPU and the Sumitro PKPU.

**D.    Need for Provisional Relief**

40. As noted above, the PKPU Orders implemented a moratorium on creditor actions during the PKPU Proceeding, all collection efforts against the debtor during are stayed and secured creditors are estopped from enforcing their security interests during the PKPU proceeding.

9

Accordingly, the Duniatex Group continues to operate in the ordinary course of business under the protection of that moratorium.

41.     In the Provisional Relief Motion, the Foreign Representative seeks to have section 362 of title 11 of the U.S. Bankruptcy Code made applicable to the Foreign Debtors' Chapter 15 Cases to preclude any parties from taking actions in the United States that would jeopardize their restructuring efforts in the PKPU Proceedings.

42.     I believe that this relief is critical to the success of the PKPU Proceedings because any lawsuit in the United States against DMDT, any member of the Duniatex Group, or Mr. Sumitro will significantly impede the Foreign Debtors' ability to implement their restructuring in Indonesia by draining the Duniatex Group's limited resources and diverting the attention of management. These problems will only be exacerbated, and the Foreign Debtors' restructuring further threatened, if the Foreign Debtors are required to engage in extremely expensive and time-consuming worldwide jurisdictional discovery.

[*signature page follows*]

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed on October, 8, 2019,
in the Republic of Indonesia.

_____
Gregorius Petrus Aji Wijaya